Filed 7/30/13  In re M.R. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re M.R., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>M.R.,<br><br>        Defendant and Appellant. | A136942<br><br>(Contra Costa County<br>Super. Ct. No. J0701950) |

Following a contested jurisdictional hearing, allegations that the minor, already a ward of the court, committed a robbery while armed with a firearm (Pen. Code, §§ 211, 12022, subd. (a)(1)) were sustained.  The minor was continued as a ward of the court and committed to the Youthful Offender Treatment Program for a period not to exceed 96 months.  In this timely appeal, the minor contends that his counsel below was ineffective, due to his failure to object to the introduction of a prior identification of the minor, both on hearsay grounds and because the identification procedure violated his due process rights.  We disagree and affirm.

**I. Factual Background**

According to information originally given to the police, on June 3, 2012, 16-year-old D.R. (hereinafter "the victim") was stopped by three youths, later identified as the minor in the current appeal (M.R.; hereinafter "the minor"), B.M. and M.E.  One of the

1

youths initially asked the victim for a cigarette and the victim gave him one. The suspects walked away, telling the victim and his brother to wait for them. The victim and his brother waited approximately five to seven minutes. The victim's brother (K.R.) fled the scene, fearing that a robbery was going to occur. Subsequently, the youths returned and one of them pointed a gun at the victim while the others took $85 in cash and two cell phones from him.[1]

Shortly after 2:00 p.m., multiple Oakland police officers responded to the scene of the reported robbery. Officer Negrete was the first to arrive on the scene. The reported robbery victim flagged down the officer and was providing a description of the robbers when the victim pointed out the three youths who had robbed him, saying, "That's them." Officer Negrete got in his car, drove north on Mandela toward 12th Street (where he had seen three persons cross the street). He stopped his vehicle about 20 feet from the three individuals, got out, and told them to stop. The three youths fled. One suspect (B.M.) ran south on Mandela and entered an apartment complex. Officer Negrete followed the other two, who fled east on 12th Street. The two youths began to climb a fence; Officer Negrete grabbed M.E. and pulled him down. He saw a black pistol fall to the ground from the waistband of M.E.'s pants. The gun was a loaded Ruger .22 caliber semiautomatic pistol. The minor, M.R., was able to temporarily escape by climbing to the other side of the fence.

Officer Negrete handcuffed M.E. and stayed with him until other officers arrived to establish a perimeter. A subsequent search of M.E. revealed several cell phones and currency. Several other officers responded to the area. The victim and his brother later pointed out two of the perpetrators of the robbery to Officer Evans. She drove south on Mandela Street in order to intercept them. She saw the minor and B.M. at the southern end of the apartment complex, behind a fence. She told them to stop, but they turned to head north in the complex. Officer Evans drove north and stopped at the other side of

---

[1] The victim later recanted much of this information, when testifying at the jurisdictional hearing. His basic account of the robbery, given to Officer Chan, was introduced through the testimony of Chan.

2

another fence that was between her and the suspects. She ordered them at gunpoint to stop and lie on the ground. The minor complied, but B.M. remained standing. Other officers arrived to assist. Officer Evans climbed the fence and searched B.M., finding cell phones, earphones, and currency. Officer Low pat searched the minor, found no weapons, and escorted him to a patrol car.

The victim was interviewed by Officer Chan, and conveyed that he had been robbed by three Black juveniles, one of whom pointed a gun at him while the others removed the contents of his pockets. Officer Chan drove the victim to 12th and Mandela Streets, where he identified an individual as one of the assailants who went through his pockets. Chan then drove the victim to 12th and Kirkham Streets, where he identified the minor and B.M., saying that B.M. held the gun to his chest during the robbery, and the minor (and the other youth that he previously had identified) went through his pockets. The victim signed a handwritten statement prepared by Officer Chan, setting forth the details of the robbery and his identification of the suspects. The minor was fully searched after he was identified by the victim; a cell phone and charger, a Clipper card, and $141 were found on his person.

## II. Discussion

On appeal, the minor claims that his counsel below was ineffective, in that he did not object to Officer Chan's testimony that the victim identified the minor as the robber who went through his pockets, based upon the prior identification allegedly being inadmissible hearsay and being the result of an unduly suggestive pretrial identification procedure. The minor's argument fails, as he has not demonstrated that counsel's performance was ineffective or that prejudice resulted.

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components." (*Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*); accord, *People* v. *Fosselman* (1983) 33 Cal.3d 572, 583–584 (*Fosselman*).) "First, the defendant must show that counsel's performance was deficient." (*Strickland, supra,* at p. 687.) Specifically, he must establish that "counsel's representation fell below an objective standard of reasonableness . . . under

3

prevailing professional norms." (*Id.* at p. 688.) Our scrutiny of defense counsel's performance must be highly deferential. We presume that defense counsel's conduct falls within a wide range of reasonable representation. (*Id.* at p. 689.) A defendant must overcome the presumption that under the circumstances, the challenged action might be considered a sound tactical decision (*ibid.*; see *In re Lucas* (2004) 33 Cal.4th 682, 722), and " ' "[if] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.' [Citations.] A claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding. [Citations.]" (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266–267.) Only rarely will a failure to object to the introduction of evidence provide the basis for a successful ineffective assistance of counsel claim. Such matters are within counsel's discretion and rarely constitute ineffective assistance of counsel. (*People v. McDermott* (2002) 28 Cal.4th 946, 993.)

In addition to showing that counsel's performance was deficient, a criminal defendant must also establish prejudice. (*Strickland, supra,* 466 U.S. at pp. 691–692.) "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Id.* at p. 693; *Fosselman, supra*, at pp. 583–584.) Specifically, "[w]hen a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." (*Strickland*, s*upra*, at p. 695.)

In the present case, no inquiry was made below of counsel for the minor as to why no objection was made, on either proffered basis, to the introduction of evidence regarding the prior identification of the minor. The minor must, therefore, bear the burden of demonstrating that there was simply *no* satisfactory basis for not objecting (that the decision was not made for sound tactical reasons), as well as demonstrating prejudice as a result.

4

*A. Failure to Object on Hearsay Grounds*

Officer Chan testified, without objection by defense counsel, that the victim identified the minor as one of the individuals who robbed him (one of the persons who went through his pockets while another individual held a gun on him). The minor claims that this testimony was hearsay, and was not admissible under the prior identification exception to the hearsay rule (Evid. Code, § 1238).[2] Section 1238 requires that in order for evidence of a prior identification to be admissible it must be demonstrated that: (a) the statement is an identification of a party . . . who participated in a crime or other occurrence; (b) the statement was made at a time when the crime or other occurrence was fresh in the witness'[s] memory; and (c) the evidence of the statement is offered after the witness testifies that he made the identification and that it was a true reflection of his opinion at the time. The minor contends that the requirements of subsection (c) were not met, as the victim testified that he did not recall identifying the people who robbed him, although he later stated that he thought the police "had the right guys." When asked again if he believed that the police had caught the right persons he responded, "I think so, yes. I don't know." He was, of course, unable to identify the minor in the courtroom.

Given the victim's equivocation, defense counsel could reasonably have made a sound tactical decision not to object, concluding that the requirements of section 1238, subsection (c) had been met. Counsel may also have made a tactical decision not to object, as the victim's prior identification would have been admissible as a prior inconsistent statement under section 1235. The minor's contention on appeal that the statement could not be admissible under section 1235, as section 1238 is the more specific provision and must prevail, fails. The two hearsay exceptions are aimed at different situations: section 1238 applies when a witness admits the prior identification and verifies its accuracy; section 1235 applies when the witness denies having made the identification or otherwise testifies in a manner inconsistent with his prior statement of identification. Were the minor's argument to prevail, it would effectively prevent the

---

[2] All further statutory references are to the Evidence Code.

prosecution from ever proving the identity of the perpetrator of a crime when the witness recants his prior identification and refuses to identify the perpetrator in the courtroom.

The minor has failed to meet his burden of demonstrating that there was *no* satisfactory explanation of trial counsel's failure to object. Additionally, since the prior identification would have been admissible even if he had objected, no prejudice has been demonstrated.

*B. Failure to Move to Suppress the Out-of-Court Identification Based Upon Due Process Grounds*

The minor also contends on appeal that trial counsel was ineffective for not moving to suppress the out-of-court identification on the grounds that the identification procedure violated his due process rights. An out-of-court identification procedure violates due process if the procedure is impermissibly suggestive, giving rise to a very substantial likelihood of irreparable misidentification. (*Stovall v. Denno* (1967) 388 U.S. 293, 301–302.) Even if the identification procedure is unduly suggestive, and unnecessarily so, the identification is still admissible if otherwise reliable under the totality of the circumstances. Factors the court will look at to determine the reliability of the identification include the opportunity of the witness to view the suspect at the time of the crime, the witness's degree of attention at the time of the crime, the accuracy of any prior descriptions of the suspect given by the witness, the level of certainty of the witness in his identification of the suspect, and the lapse of time between the crime and the identification. (*Manson v. Brathwaite* (1977) 432 U.S. 98, 111–112, 114 (*Manson*); *People v. Cunningham* (2001) 25 Cal.4th 926, 989 (*Cunningham*).) As our Supreme Court recently noted, " '[i]f, and only if, the answer to the first question is yes and the answer to the second is no, is the identification constitutionally unreliable.' [Citations.] In other words, '[i]f we find that a challenged procedure is not impermissibly suggestive, our inquiry into the due process claim ends.' [Citation.]" (*People v. Ochoa* (1998) 19 Cal.4th 353, 412 (*Ochoa*).)

In the present case, our inquiry could end with a finding that the identification procedure was not impermissibly suggestive. The minor was presented to the victim for

an in-field identification procedure, shortly after he was detained by the police. The victim remained in Officer Chan's police car; the minor stood in front of another police car. The minor was handcuffed and standing next to another police officer. The minor was standing 30 to 45 feet away from the victim at the time of the identification. The victim identified the minor as one of the persons who went through his pockets. The victim also identified another individual at that location, and indicated he was the person with the gun. He had already indentified the third robber at a different location.

Identifying the perpetrators of this crime quickly was a necessity, as a robbery by three individuals involving the use of a firearm had just occurred. Removing the individuals responsible for this violent crime from the streets in an expeditious manner was a priority; the in-field showup procedure accomplished that need. Additionally, in order to take advantage of any other identification procedure, such as a photographic or live lineup, the minor and the other two suspects would have had to have been detained for a protracted period of time. Despite the minor's citation to older California and out-of-state authority condemning one-person showups, the California Supreme Court has not declared such showups to be unconstitutionally suggestive in all circumstances.

In *Ochoa*, the court first noted that the standard of review for a claim of undue suggestiveness is unsettled, and declined to resolve the issue, but went on to find the particular procedure in that case passed muster even under the independent review standard. (*Ochoa*, *supra*, 19 Cal.4th at p. 413.) The court then specifically declared that " '[t]he "single person showup" is not inherently unfair.' [Citation.]" (*Ibid*.) As the court explained, in order for a witness identification procedure to violate due process, the state must improperly suggest something to the witness—it must "initiate an unduly suggestive procedure." It is only a procedure that suggests the identity of the person suspected by the police in advance of identification of the suspect by the witness that is unfair. (*Ibid*.)

Assuming, without deciding (as the court did in *Ochoa*), that the standard of review regarding suggestiveness is by independent review, we find that the minor has failed to meet his burden of demonstrating that the identification process here was

7

impermissibly suggestive and unnecessary.  Officer Chan admonished the victim that the individuals he was shown might or might not be involved with the crime, and might or might not be the suspects.  Chan did not signal to the victim that he should identify the minor as the person who went through his pockets.  He put no pressure on the victim, nor did he use any intimidation, to get him to identify anyone.  The identification procedure was not unduly suggestive, and given the nature of the crime that had just been committed, was necessary under the circumstances to quickly apprehend suspects involved in an armed robbery, in order to protect citizens and to possibly allow the detained individuals to go free if not identified.  Indeed, single person showups for in-field identifications are encouraged because any element of suggestiveness is offset by the reliability of an identification made while the events are fresh in the witness's memory and because the interests of both law enforcement and suspects are best served by an immediate determination as to whether the correct person has been apprehended. (*In re Carlos M*. (1990) 220 Cal.App.3d 372, 387.)

Our inquiry could end here.  But we also note that the identification of the minor was otherwise reliable, considering the totality of the circumstances and factors identified in *Manson*, *supra*, 432 U.S. at pages 104–107.  The victim had two opportunities to view the minor and his companions, in daylight (once when they approached to ask for a cigarette and then when they returned to rob the victim); during those periods nothing would indicate that the victim's attention was distracted from the minor and his companions; other than a mistake regarding the weight of the individual who went through his pockets, the victim's description of the minor to the police before the identification procedure was accurate;[3] the victim appeared certain of his identification at

---

[3] On appeal, the minor makes much of the fact that the victim's description of him was incorrect with regard to his weight (being off by some 40-50 pounds).  However, the description referred to in the minor's opening brief is the detailed description given by the victim *after* he viewed the in-field identification procedure.  The victim and his brother had begun to describe the suspects right after they flagged down the police, but the process was interrupted when they observed the suspects on the street and pointed them out to the police.  Officer Negrete, who received the initial (pre-identification

the time it was made; and less than an hour elapsed between the robbery and the in-field identification procedure. The minor "bears the burden of demonstrating the existence of an unreliable identification procedure. [Citations.]" (*Cunningham, supra,* 25 Cal.4th at pp. 989–990.) He has failed to do so here. Under the totality of these circumstances, the identification was reliable.

The minor has failed to meet his burden of showing that his trial attorney's decision not to challenge the identification procedure on due process grounds was not made for sound tactical purposes. He has not demonstrated that there could be no satisfactory explanation for his failure to move to suppress the identification, as the trial court in all likelihood would have denied the motion for the reasons set forth above. For the same reason, the minor has failed to show that prejudice resulted from his trial counsel's inaction in this regard.

---

procedure) description of the suspects was prevented from testifying regarding the details of that description, such as height and weight, due to hearsay objections by defense counsel.

## III. Disposition

The minor has not satisfied either prong of the *Strickland* test for ineffective assistance of counsel.  The judgment is affirmed.

_____
Sepulveda, J.*

We concur:

_____
Dondero, Acting P.J.

_____
Banke, J.

* Retired Associate Justice of the Court of Appeal, First Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.